# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| WASHINGTON PRIME GROUP INC., *et al.*,[1] | § | Case No. 21-31948 (MI) |
| | § | |
| Debtors. | § | |
| | § | |
| | § | (Jointly Administered) |
| | § | (Emergency Hearing Requested) |

**REORGANIZED DEBTORS' EMERGENCY MOTION**
**TO COMPEL COMPLIANCE WITH THIS COURT'S PROTECTIVE ORDER**

**Emergency relief has been requested. Relief is requested not later than November 15, 2021.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on November 15, 2021, at 9:30 a.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk Street, Houston, Texas 77002. You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's homepage. The meeting code is "JudgeIsgur." Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's homepage. Select the case**

---

[1] A complete list of each of the Reorganized Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained at https://cases.primeclerk.com/washingtonprime. The Reorganized Debtors' service address is 180 East Broad Street, Columbus, Ohio 43215.

> **name, complete the required fields and click "Submit" to complete your appearance.**

Washington Prime Group Inc. ("WPG") and its affiliated reorganized debtors (collectively, the "Reorganized Debtors") file this Emergency Motion seeking to compel various entities—Glancy Prongay & Murray LLP, The Wagner Firm, Biller & Kimble LLC, and their clients (collectively, the "Securities Plaintiffs")—that improperly obtained and are improperly using the Debtors' Confidential and Advisors' Eyes Only Discovery Material (the "Discovery Material") in violation of this Court's July 8, 2021 Protective Order (Ex. A, the "Protective Order") to comply with that Order and immediately (a) return all such improperly obtained Discovery Material and destroy any derivative works reflecting Discovery Material; (b) cease improperly using the Discovery Material in the separate securities litigation that they have initiated against two non-debtor individuals in the U.S. District Court for the Southern District of Ohio, Case No. 2:21-cv-02757; Case No. 2:21-cv-03431 (the "Securities Litigation"); and (c) identify any other individuals or entities to whom they have disclosed the Reorganized Debtors' protected Discovery Material. The Reorganized Debtors respectfully request that the Court grant the relief requested herein and any other relief that the Court deems just and appropriate not later than November 15, 2021.

## PRELIMINARY STATEMENT

1. The Reorganized Debtors bring this Motion to compel the Securities Plaintiffs to comply with the Protective Order this Court entered on July 8, 2021. The Reorganized Debtors learned last week that the Securities Plaintiffs improperly acquired and are improperly using Confidential and Advisors' Eyes Only Discovery Material that the Reorganized Debtors produced in these bankruptcy cases (the "Cases") in a putative class action securities lawsuit that they have initiated in Ohio against two non-debtor defendants—namely, Louis Conforti (WPG's former Chief Executive Officer) and Mark Yale (WPG's Chief Financial Officer).

2

2.       The Securities Plaintiffs' violations of this Court's Protective Order came to light when they filed a motion to seal ("Motion to Seal") a Consolidated Amended Complaint (the "Amended Complaint") that they proposed to file in the Ohio Securities Litigation.[2]  The Amended Complaint extensively quotes and references deposition testimony and other information that the Reorganized Debtors produced in these Bankruptcy Cases, including Discovery Material designated as Confidential and Advisors Eyes' Only (the "Designated Material") pursuant to the Protective Order.  In their Motion to Seal, the Securities Plaintiffs expressly concede that this Court's Protective Order applies to the Discovery Material they are seeking to use and limits the distribution and use of such Material.  Nevertheless, despite this acknowledgement and the Reorganized Debtors' repeated requests that they return the Discovery Materials and stop using the material in the Securities Litigation, the Securities Plaintiffs have failed to do so.

3.       Worse still, the Securities Plaintiffs refuse to provide basic information that the Reorganized Debtors have requested, including whether and when they have agreed to be bound by the Protective Order by executing Exhibit A to that Order, the identification of all the protected Discovery Material they received and when they received it, and whether they distributed any of the Discovery Material to others and, if so, to whom.  The Reorganized Debtors therefore have no choice but to bring this Motion to protect their Discovery Material, enforce this Court's Protective Order, and stop the Securities Plaintiffs' flagrant and ongoing violations of that Order.

4.       The Securities Plaintiffs' possession and use of this Discovery Material violates the Protective Order in several respects.  *First*, the Securities Plaintiffs improperly acquired the

---

[2]     The motion to seal filed by the Securities Plaintiffs in the Securities Litigation is attached as Exhibit B.  *In re Washington Prime Group, Inc.*, No. 2:21-cv-02757-JGL-KAJ (Dkt. No. 323).  The Securities Plaintiffs have not yet filed the Amended Complaint on the Securities Litigation docket, but on November 1, 2021, they purported to serve a copy the Amended Complaint on counsel for Defendants Conforti and Yale in the Securities Litigation.

Reorganized Debtors' Designated Material in violation of paragraphs 11 and 12 of the Protective Order. Those provisions make clear that Confidential and Advisors' Eyes Only materials may only be disclosed to outside counsel for "Parties" to the Protective Order. "Parties" to the Protective Order include only those entities specifically enumerated in the Protective Order and other entities that have executed Exhibit A to that Order and agreed to be bound by its terms before receiving Designated Material. None of the Securities Plaintiffs were Parties to the Protective Order at the time they received the Designated Material, and there is no evidence that two of the three Securities Plaintiffs have executed Exhibit A even to this day.

5. **Second**, even if the Securities Plaintiffs had executed Exhibit A to the Protective Order at the time of the disclosure (which they concede is not the case), disclosure to outside counsel for Parties is permissible "only as necessary to assist with or make decisions with respect to the Cases," which is expressly defined to mean "the Debtors' bankruptcy cases" and "the Debtors filing of voluntary petitions under chapter 11 of title 11 of the United States Code, U.S.C. §§ 101-1532 (the "Bankruptcy Code") in this Court." (Ex. A at 1, 2, ¶¶ 11.) Because the Securities Plaintiffs did not acquire the Designated Material to assist with or make any decisions with respect to the Cases, their possession of those materials violates the Protective Order.

6. **Third**, and independently, the Securities Plaintiffs' use of the Debtors' Discovery Material in the Securities Litigation violates the plain language of Paragraph 10 of the Protective Order, which provides that "[a]ll Discovery Material, whether Designated or non-Designated Material, shall be used by the Receiving Parties *solely for the purposes of the Cases* and *solely to the extent reasonably necessary to accomplish the purpose for which the disclosure is made*, and *not for any other purpose*." (*Id.* ¶ 10 (emphasis added).) This Court's Protective Order allowed the Parties to engage in comprehensive and expedited discovery for the efficient resolution of these

4

Bankruptcy Cases, not for some separate litigation. The Parties and the witnesses who sat for deposition in these Cases—including Messrs. Conforti and Yale, who were not represented at those depositions by their individual counsel in the Securities Litigation—justifiably relied on this Court's Protective Order in providing testimony and information during discovery in those proceedings. The requirements set forth in this Court's order should be respected and enforced. *See S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010).

7. The Securities Plaintiffs have refused repeated demands to return and cease their improper use of the Discovery Material, necessitating this Motion.

## BACKGROUND

### A. The Securities Litigation.

8. The Securities Plaintiffs are counsel of record to various named plaintiffs in the Securities Litigation. Glancy Prongay & Murray LLP ("Glancy") is a limited liability partnership based in Los Angeles, California with offices in New York, New York and Berkeley, California. The Wagner Firm ("Wagner") is a law firm based in Los Angeles, California. Biller & Kimble LLC ("Biller") is a law firm based in Cincinnati, Ohio.

9. On May 24, 2021, Randy Slipher initiated a putative Class Action Complaint in the Southern District of Ohio for violations of the federal securities laws, on behalf of a purported class consisting of "all persons and entities that purchased or otherwise acquired WPG securities between November 5, 2020 and March 4, 2021." *Silpher v. Washington Prime Group, Inc.*, No. 2:21-v-02757-JGL-KAJ (S.D. Ohio), Dkt. No. 1 ¶ 35. Soon after, on June 9, Jean-Marie Cousinou filed a substantially similar lawsuit, also in the Southern District of Ohio. *Cousinou v. Washington Prime Group, Inc.*, No. 2:21-cv-03431-SDM-EPD (S.D. Ohio), Dkt. No. 1.

10. Both Complaints named Mr. Conforti and Mr. Yale as defendants, claiming that they made various alleged misrepresentations and omissions about WPG Inc.'s financial condition

5

and ability to meet debt obligations as they came due. (Slipher Compl. at ¶ 8; Cousinou Compl. at ¶ 8.) While Mr. Slipher originally also named WPG as a defendant, he dismissed his claims against the company after these Cases were initiated. *Slipher v. Washington Prime Group, Inc.*, No. 2:21-v-02757-JGL-KAJ (S.D. Ohio), Dkt. No. 7. Accordingly, only non-debtors Mr. Conforti and Mr. Yale are named defendants in the Securities Litigation.[3]

11. The *Slipher and Cousinou* cases were consolidated on September 16, 2021. *Slipher v. Washington Prime Group, Inc.*, No. 2:21-v-02757-JGL-KAJ (S.D. Ohio), Dkt. No. 14. The Court appointed Glancy as Lead Counsel and Biller as Liaison Counsel for the putative class.

**B.      Discovery in the Bankruptcy Proceedings and the Protective Order.**

12. The Debtors commenced the Cases before this Court on June 13, 2021. The parties to these Cases engaged in robust fact and expert discovery on a variety of topics and under a compressed timeframe in preparation for the confirmation hearing before the Court. To "facilitate and expedite the production, exchange and treatment of Discovery Material[], to facilitate the prompt resolution of disputes over confidentiality, and to protect Discovery Material [] that a Party seeks to maintain as confidential," at the parties' request, this Court entered the Protective Order on July 8, 2021. (Ex. A, Protective Order at 2.)

13. The Protective Order governs the exchange of Discovery Materials between all "Parties" to the Order. The Protective Order defines the "Parties" to include only: (a) the Debtors in the Cases, (b) the Official Committee of Unsecured Creditors, (c) the Ad Hoc Preferred Shareholders Committee, (d) Strategic Value Partners, LLC, (e) the Ad Hoc Lender Group, and

---

[3]     Notably, under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Securities Plaintiffs are not entitled to conduct discovery in the Securities Litigation before the defendants' forthcoming motion to dismiss is adjudicated, several months from now. 15 U.S.C. § 77z-1(b)(1).

(f) "any other persons or entities who become bound by this Order by signifying their assent through execution of <u>Exhibit A</u> hereto (a '<u>Declaration</u>')." (*Id.* at 1 (emphasis in original).)

14.     The Protective Order protects disclosure and dissemination of all "Discovery Material," which is defined broadly to include "all information, documents and things exchanged in, or subject to, discovery or provided in response to a diligence request, either by a Party or a non-Party (each, a '<u>Producing Party</u>') to any other Party or non-Party (each a '<u>Receiving Party</u>'), formally or informally, in response to or in connection with any Discovery Requests or diligence requests, including without limitation deposition testimony, interviews, documents, data and other information." (*Id.* at 3 (emphasis in original).)

15.     The Protective Order also provides a process for a Producing Party to designate certain Discovery Material as "Confidential" or "Advisors Eyes' Only," (together, "Designated Material") entitling it to additional protections. (*Id.* at ¶ 6.)

16.     To promote the efficient exchange of information, the Protective Order makes clear that all Discovery Material—whether or not designated as Confidential or Advisors' Eyes Only— may be used *solely* for purposes of the Cases and *not for any other purpose*:

> All Discovery Material, whether Designated Material or non-Designated Material, shall be used by the Receiving Parties *solely for the purposes of the Cases* and solely to the extent reasonably necessary to accomplish the purpose for which disclosure is made, and *not for any other purpose*, including any business, competitive, governmental, commercial, or administrative purpose or function.[4]

(*Id.* at ¶ 10 (emphasis added).)

---

[4]     Under the Protective Order, "Receiving Parties" may include both Parties to the Protective Order as well as non-Parties to the Protective Order. (*Id.* ¶ 3.)

17. For the avoidance of doubt, the order defines "Cases" to mean "the Debtors' bankruptcy cases" and "the Debtors' filing of voluntary petitions under chapter 11 of title 11 of the United States Code, U.S.C. §§ 101-1523 (the 'Bankruptcy Code') in this Court." (*Id.* at 1.)

18. Paragraphs 11 and 12 of the Protective Order further restrict disclosure of a Producing Party's Designated Material to outside counsel for "Parties" to the Protective Order, and even then, "***only as necessary to assist with or make decisions with respect to the Cases***." (*Id.* at ¶¶ 11-12 (emphasis added).)

19. Exhibit A, which an individual or entity must sign to become "Party" to the Protective Order, contains a certification confirming that the signatory understands and agrees to be bound by the terms of the Protective Order. (*Id.* at 23-24.) By executing Exhibit A, the signatory expressly agrees that:

> I will not use Designated Material for any purpose ***other than the Cases***, and will ***not disclose or cause Designated Material to be disclosed*** to anyone not expressly permitted by the Order to receive Designated Material. I agree to be bound by the terms and conditions of the Order.

(*Id.* (emphasis added).)

20. With the Protective Order in place, the Parties participated in extensive document discovery and depositions. This discovery included depositions of Messrs. Conforti and Yale, as well as Ronen Bojmel (Guggenheim Securities, LLC), Michael Schwartz (Strategic Value Partners, LLC) and Vishal Chanani (Ad Hoc Lender Group). All of these deposition transcripts constitute Discovery Material under the Protective Order. In addition, Messrs. Conforti's and Yale's transcripts were designated "Advisors' Eyes Only" under the Protective Order, Mr. Bojmel's transcript was designated "Highly Confidential" under the Protective Order, and Mr. Chanani's transcript was designated "Confidential" under the Protective Order.

21.     The Securities Plaintiffs did not receive any document discovery from any Party. Nor did they attend or ask to attend any of the depositions in the Cases.  Messrs. Conforti's and Yale's counsel in the Securities Litigation likewise did not participate in their depositions.

### C.     The Securities Plaintiffs Improperly Obtain and Use Discovery Material.

22.     The Securities Plaintiffs were aware that Debtors did not consent to their possession or use of Discovery Material.  In early September 2021, Wagner and Glancy requested that the Debtors provide a copy of their document production, which included Designated Material.  On September 3, 2021, the Debtors informed Glancy and Wagner that they would not agree to share their document production.

23.     Unbeknownst to the Reorganized Debtors, undeterred, the Securities Plaintiffs began to explore other avenues to obtain Discovery Material to use in the Securities Litigation. On or about September 28, 2021—more than three weeks *after* the Confirmation Hearing — and without informing the Reorganized Debtors, Mr. Wagner contacted Brown Rudnick LLP ("Brown Rudnick"), counsel to the Official Equity Committee, to request that they provide copies of the Reorganized Debtors' Discovery Materials.  (Ex. C, 11/8/21 Brown Rudnick Letter.)

24.     During a brief phone call with a Brown Rudnick partner, Mr. Wagner requested the contact information for the court reporter in the Cases.  (*Id.*)  The Brown Rudnick partner referred Mr. Wagner to a Brown Rudnick associate to provide the court reporter's contact information.  The Brown Rudnick associate indicated that during this subsequent phone conversation, Mr. Wagner represented to him that Mr. Wagner had executed Exhibit A to the Protective Order, informed the associate that he was looking for deposition transcripts, and after being told that the associate had the transcripts he was looking for, discussed receiving them directly from the associate.  (*Id.*)  In reliance on Mr. Wagner's representations, the Brown Rudnick associate agreed to provide him the transcripts from the depositions of Conforti, Yale, Bojmel, Schwartz, and Chanani.  (*Id.*)

9

25.     On November 1, 2021, the Securities Plaintiffs filed a motion to seal portions of the Amended Complaint in the Securities Litigation.  (Ex. B, Securities Plaintiffs' Motion to Seal.) At the same time, the Securities Plaintiffs purported to serve a copy of the Amended Complaint on Blank Rome LLP ("Blank Rome"), counsel for Conforti and Yale in the Securities Litigation.

26.     The Amended Complaint makes extensive and improper use of Discovery Material. In particular, the Amended Complaint repeatedly quotes and references Messrs. Yale's and Conforti's depositions in the Cases, both of which are designated Advisors' Eyes Only.  The testimony from Messrs. Yale and Conforti discusses and reflects the WPG Inc.'s confidential business information and other Designated Material produced in discovery in the Cases.

27.     Recognizing that the quoted Discovery Material had been designated Confidential and Advisors' Eyes Only and was subject to this Court's Protective Order, the Securities Plaintiffs asked the Ohio district court to seal the Amended Complaint and allow them to file a redacted version on the public docket.  Indeed, in their Motion to Seal, the Securities Plaintiffs expressly acknowledged that:

> The Complaint references and quotes from deposition transcripts (the "Deposition Transcripts") from *In re: Washington Prime Group, Inc., et al.* [sic], Case No. 21-31948 (MI) pending in the United States Bankruptcy Court for the Southern District of Texas Houston Division ("Bankruptcy Proceeding") that were marked confidential/professionals' eyes' only under the protective order in place in that proceeding (the "Protective Order"), and as such were deemed by the debtors to be inappropriate for public disclosure."  (Ex. B, Sec. Pls' Mot. to Seal at 1.)

28.     The Motion to Seal attached the Protective Order itself as an exhibit, demonstrating that the Securities Plaintiffs were fully aware of the Protective Order and its terms.  (*Id.*)

**D.      Despite Repeated Requests by the Reorganized Debtors and Brown Rudnick, the Securities Plaintiffs Refuse To Comply with the Protective Order.**

29.     Since learning of the Securities Plaintiffs' improper possession and use of Discovery Material, counsel for the Reorganized Debtors and Brown Rudnick have repeatedly

demanded that the Securities Plaintiffs cease their continued violation of the Protective Order and return the protected Discovery Material—to no avail.

30.     On November 2, 2021, one day after the Securities Plaintiffs filed their Motion to Seal, Blank Rome, in consultation with counsel to the Reorganized Debtors, informed the Securities Plaintiffs that "possession of and use of [the Discovery Material] in connection with [the Securities Litigation] is improper and in clear violation of the protective order entered in the Bankruptcy Proceeding." (Ex. D, 11/2/21 Blank Rome Letter at 1.)  Blank Rome requested that the Securities Plaintiffs "(1) remove any reference to, or quotes from any of the Advisors'-Eyes Only depositions in the Consolidated Amended Complaint; (2) return all copies of the deposition transcripts to counsel for WPG in the Bankruptcy Proceeding; and (3) certify that Plaintiffs and you are not in possession of any such transcripts or documents related thereto." (*Id.* at 2.)

31.     The Securities Plaintiffs responded on November 3, 2021, refusing those requests. (Ex. E, 11/3/21 Glancy Letter.)  Blank Rome and the Securities Plaintiffs exchanged additional correspondence on November 3, 2021, and the Securities Plaintiffs again refused to comply with Blank Rome's demands.  (Ex. F–G, 11/3/21 Letters.)

32.     On November 5, 2021, Blank Rome, Kirkland & Ellis LLP ("Kirkland & Ellis"), counsel for the Reorganized Debtors, and the Securities Plaintiffs met and conferred regarding these issues.  During this call, Kirkland & Ellis explained that the Securities Plaintiffs had violated the Protective Order by improperly possessing Designated Material and by improperly using Discovery Material in the Securities Litigation.  (Ex. H, 11/6/21 Kirkland & Ellis Letter.)  Further, Kirkland & Ellis requested that the Securities Plaintiffs provide basic information regarding the circumstances under which they acquired the protected Discovery Material, including by identifying: (a) the individuals who provided Discovery Material to the Securities Plaintiffs, (b)

11

what materials they received, (c) the dates on which those disclosures were made, (d) whether the Securities Plaintiffs had executed Exhibit A, and if so when, and to provide copies of those signed exhibits, and (e) any other individuals with whom the Securities Plaintiffs had shared the protected Discovery Material. (*Id.*)

33. The Securities Plaintiffs were unable or unwilling to answer any of these questions during the November 5, 2021 call. Rather, Mr. Wagner stated simply that he believed he had received the protected Discovery Material from "someone" at Brown Rudnick and believed he had signed Exhibit A "a bit ago." None of the other Securities Plaintiffs provided any of the requested information. They refused Kirkland & Ellis's request that they follow up with at least some of the requested information after checking their files later that day. (*Id.*)

34. On November 6, 2021, the Reorganized Debtors wrote to the Securities Plaintiffs to again follow up on their improper possession and use of the protected Discovery Material and to request that they provide the basic information requested the day before. (*Id.*)

35. Receiving no response from the Securities Plaintiffs, the Reorganized Debtors reached out to Brown Rudnick. As a result, on November 8, 2021, Brown Rudnick likewise wrote to the Securities Plaintiffs, stating that the Securities Plaintiffs' possession and use of the deposition transcripts violated the Protective Order. (Ex. C, 11/8/21 Brown Rudnick Letter.) Brown Rudnick similarly requested that the Securities Plaintiffs immediately "(i) destroy all such transcripts, and any full or partial copies thereof, that are in your possession, (ii) cease all review and dissemination of any such materials, and (iii) amend your filings or other work product to delete from them any information acquired from those materials." (*Id.* at 2.)

36. Two more days passed, still without any substantive response from the Securities Plaintiffs. Finally, on November 9, 2021, the Securities Plaintiffs responded to the Reorganized

Debtors' November 6, 2021 letter. (Ex. I, 11/9/21 Glancy Letter.) Despite taking four days to respond, the Securities Plaintiffs refused to return or destroy the Reorganized Debtors' protected Discovery Material, refused to remove references to the Discovery Material from their Amended Complaint, refused to provide any new information about how they had come into possession of the Discovery Material, refused to say whether they each had agreed to be bound by the Protective Order, refused to provide copies of any executed Exhibits to the Protective Order, and refused to state whether anyone else had received the Reorganized Debtors' protected Discovery Material. Instead, the Securities Plaintiffs devoted their letter to making unfounded legal arguments about why they believed the Protective Order supposedly allowed them to use the Discovery Material in the Securities Litigation and why they believed that information helped their case. (*Id.*)

37.     On November 11, 2021, the Securities Plaintiffs finally provided Brown Rudnick with a copy of Exhibit A to the Protective Order that Mr. Wagner apparently signed, dated September 29, 2021 (the day *after* he had spoken with the Brown Rudnick associate and received the deposition transcripts).

38.     Finally, on November 12, 2021, Kirkland & Ellis wrote to the Securities Plaintiffs, explaining that they continued to violate the Protective Order and that the parties were at an impasse. (Ex. J, 11/12/21 Kirkland & Ellis Email.)

39.     To date, the Securities Plaintiffs have not taken any steps to address their improper possession and use of the Discovery Material. Rather, the Securities Plaintiffs continue to violate the Protective Order by retaining and using the Discovery Material in the Securities Litigation.

## ARGUMENT

I.      **THE SECURITIES PLAINTIFFS HAVE VIOLATED THE PROTECTIVE ORDER IN MULTIPLE RESPECTS.**

      A.      **The Securities Plaintiffs Improperly Obtained the Reorganized Debtors' Confidential and Advisors' Eyes Only Materials.**

13

40. The Securities Plaintiffs improperly acquired the Reorganized Debtors' Confidential and Advisors' Eyes Only materials in violation of Paragraphs 11 and 12 of the Protective Order. Those provisions make clear that Confidential and Advisors' Eyes Only Material may only be provided to "outside counsel for the Parties" to the Protective Order, and even then, "only as necessary to assist with or make decisions *with respect to the Cases.*" (Ex. A, Protective Order at ¶¶ 11-12.)

41. None of the Securities Plaintiffs were Parties to the Protective Order when they received the Reorganized Debtors' Designated Material. The Securities Plaintiffs are not one of the enumerated "Parties" in the Protective Order, and none of the Securities Plaintiffs had executed Exhibit A to the Order at the time the disclosure was made. Wagner received Designated Material on September 28, 2021 and claims to have executed Exhibit A the next day, and there is no indication that Glancy or Biller (or other potential recipients) have executed Exhibit A at any time.[5]

42. Even if the Securities Plaintiffs had executed Exhibit A at the time of disclosure (which they did not), their acquisition of Debtors' Designated Material to assist with the Securities Litigation is an independent violation of the Protective Order. As noted, Paragraphs 11 and 12 allow disclosure of Designated Material to outside counsel for Parties "only as necessary to assist with or make decisions *with respect to the Cases*"—not the Securities Litigation. The Securities Plaintiffs asked Brown Rudnick for the materials weeks after the Plan of Reorganization was confirmed. That request did not relate to any decision-making with respect to the Cases, but rather was intended to support claims against non-debtors in a separate Securities Litigation pending in federal district court in Ohio. By seeking copies of the bankruptcy depositions, the Securities

---

[5] Wagner did not provide an executed copy of Exhibit A until November 11, 2021, after days of repeated requests from the Reorganized Debtors and Brown Rudnick. Even then, the Exhibit was provided only to Brown Rudnick, not to Kirkland & Ellis.

Plaintiffs attempt an end-run around the PSLRA, which precludes them from engaging in any such discovery in the Securities Litigation unless and until their claims survive the defendants' forthcoming motion to dismiss. Indeed, the Securities Plaintiffs seemingly recognized that their acquisition of Designated Material from Brown Rudnick was improper because Debtors' counsel had expressly refused their previous request for those materials earlier that same month. (*Supra* ¶ 21.) Such gamesmanship should not be countenanced.

**B.** **The Securities Plaintiffs' Use of Protected Discovery Material in the Securities Litigation Violates the Protective Order.**

43. Even if the Securities Plaintiffs had properly acquired the Reorganized Debtors' protected Discovery Material, their use of that information in the Securities Litigation is a separate and independent violation of the Protective Order. Paragraph 10 of the Protective Order expressly provides that that "[a]ll Discovery Material, whether Designated Material or non-Designated Material, shall be used by the Receiving Parties *solely for the purposes of the Cases* and solely to the extent reasonably necessary to accomplish the purpose for which disclosure is made, and *not for any other purpose*." (Ex. A, Protective Order at ¶ 10.) Signatories to Exhibit A of the Protective Order further expressly certify that they "will not use Designated Material for any purpose *other than the Cases*." (*Id.*, Protective Order Exhibit A at 1.) The Securities Litigation is not one of "the Debtors' bankruptcy cases," (*id.*), and therefore, the Securities Plaintiffs' use of the Reorganized Debtors' Discovery Material violates the Protective Order.

44. The Securities Plaintiffs' assertion that the Debtors' protected Discovery Material is relevant to issues in the Securities Litigation (Ex. I, 11/9/21 Glancy Letter) misses the point. The arguable relevance of Discovery Material to some other litigation or matter does not permit a party to unilaterally disregard or alter the provisions of the Protective Order on which the Parties and witnesses have justifiably relied in conducting discovery in these Cases.

15

45.     It is well-settled that enforcement of protective orders under Federal Rule of Civil Procedure 26 and Bankruptcy Rule 7026—including provisions prohibiting use of discovery material in ***other litigation***—promotes efficient exchange of discovery material.  *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979) ("Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation[.]"); *see, e.g.*, *In re 50-Off Stores, Inc.*, 213 B.R. 646, 657 (Bankr. W.D. Tex. 1997).

46.     As such, courts have repeatedly enforced protective orders on which parties have relied in producing confidential discovery material.  *See, e.g.*, *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010) ("[C]ourts should be wary of retroactive attempts to modify [protective orders] in ways that undermine the justified reliance of a witness . . . on a valid order circumscribing the use and availability of information disclosed through discovery."); *Gutman v. Klein*, 2007 WL 9706609, at *4 (E.D.N.Y. Sept. 26, 2007) ("It is, moreover, presumptively unfair for courts to order the revision of stipulations that assure confidentiality and upon which the parties have reasonably relied.").

47.     Bankruptcy proceedings, in particular, often require disclosure of the parties' most detailed and sensitive information "to which [litigants] would otherwise not be entitled in ordinary nonbankruptcy litigation." *In re 50-Off Stores, Inc.*, 213 B.R. at 659.  Ensuring that parties are confident that they can rely on Court orders protecting improper disclosure or use of such highly confidential information is critical to the expedient administration of bankruptcy proceedings.

48.     The Securities Plaintiffs' contention that they should be allowed to use the Reorganized Debtors' protected Discovery Material in litigation unrelated to these Bankruptcy Cases is an improper attempt to rewrite the plain terms of the Protective Order and excuse their

16

past and ongoing violations. Such a result would be unfair to all the Parties that participated in discovery in the Cases in good faith and would chill open and expedient information exchange and discovery in future cases.

49. The Securities Plaintiffs have advanced several arguments as to why they believe they should be permitted to use the Reorganized Debtors' protected Discovery Material in the Securities Litigation, each of which lacks merit. *First*, in their November 9 letter, they for the first time challenge the Reorganized Debtors' designation of unspecified portions of the transcripts as Confidential or Advisors' Eyes Only. (Ex. I, 11/9/21 Glancy Letter at 2.) But those assertions are contrary to the Securities Plaintiffs' own Motion to Seal, in which they acknowledge the Discovery Material was marked Confidential and Advisors' Eyes Only and should be kept from the public domain. (Ex. B at 1.) Moreover, the Protective Order expressly provides that "[a]ll Discovery Material" produced during the Cases—whether or not designated as Confidential or Advisors' Eyes Only—"shall be used by the Receiving Parties ***solely for purposes of the Cases*** and solely to the extent reasonably necessary to accomplish the purpose for which disclosure is made, and ***not for any other purpose***," such as the Securities Litigation. (Ex. A, Protective Order at ¶10.)

50. *Second*, the Securities Plaintiffs seem to contend that the Securities Litigation is a "Dispute" "arising out of or relating to" the Bankruptcy Cases, and that somehow permits their use of the Discovery Material in that separate litigation. (Ex. I, 11/9/21 Glancy Letter at 1-2.) That strained reading of the definition of "Dispute" in the Protective Order as something extending beyond these bankruptcy cases is patently incorrect. But in any event, that issue is irrelevant. The Protective Order permits the use of Discovery Material "solely for the purposes of the ***Cases***"— not "Disputes." (Ex. A, Protective Order at ¶10.) As explained, "Cases" are expressly and

17

unequivocally limited to "*the Debtors' bankruptcy cases*," and do not include any disputes in some other litigation. (*Id.* at 1.)

## II. THE SECURITIES PLAINTIFFS SHOULD BE COMPELLED TO COMPLY WITH THE PROTECTIVE ORDER.

51. Given the Securities Plaintiffs' flagrant and ongoing violations of the Protective Order, the Court should issue an order compelling the Securities Plaintiffs to comply with its terms.

52. *First*, the Court has the inherent authority enforce its own orders, including protective orders applicable to material exchanged in discovery. *See Chambers v. NASCO Inc.*, 501 U.S. 32, 43-44 (1991) (confirming that jurisdiction extends to exercising certain inherent powers of federal courts, including the power of a court to enforce its own lawful orders). The Court retains this authority even after the Cases are closed or terminated. *In re Com. Fin. Servs., Inc.*, 247 B.R. 828, 844 (Bankr. N.D. Okla. 2000) ("[B]ankruptcy courts retain jurisdiction over certain matters after dismissal or closing of a bankruptcy case. Courts inherently have the power to enforce their own orders, regardless of whether a case is open or closed. A protective order that concerns the preservation of privileges and confidentiality endures beyond the closing of a case, and thus the court that enters an order retains jurisdiction to enforce it, and other courts cannot disregard it." (citations omitted)); *Beebe v. Nutribullet, L.L.C.*, 2019 WL 4261876, at *8 (C.D. Cal. July 3, 2019) (collecting cases holding that, "[a]s a general matter, the court that issues a protective order retains jurisdiction to enforce it, even after the case has closed").

53. *Second*, the Protective Order itself confirms that the Court has broad authority and continuing jurisdiction to issue necessary orders to enforce its terms. Paragraph 37 provides that "[t]he provisions of this Order constitute an Order of this Court and violations of the provisions of this Order are subject to enforcement and the imposition of legal sanctions in the same manner as any other Order of the Court." (Ex. A, Protective Order at 37.) Paragraph 29 further provides that

18

the "final termination of the Cases shall not relieve counsel or other persons obligated hereunder from their responsibility to maintain the confidentiality of the Designated Material pursuant to this Order, and the Court shall retain jurisdiction to enforce the terms of this Order." (*Id.* at ¶ 29.)

54. *Third*, the Securities Plaintiffs themselves acknowledge that the Protective Order applies to the Discovery Material and restricts their dissemination and use of that Material. They invoked this Court's Protective Order and the Reorganized Debtors' confidentiality designations in asking the Ohio court to seal protected information in their Amended Complaint.

55. *Finally*, despite the Reorganized Debtors' and Brown Rudnick's best efforts to bring the Securities Plaintiffs into compliance with this Protective Order and cease improper use of Discovery Material, the Securities Plaintiffs have steadfastly refused to do so. They have likewise refused to provide basic information that the Reorganized Debtors need to ensure their Confidential and Advisors' Eyes Only material is protected and will not continue to be disseminated. Accordingly, the Reorganized Debtors respectfully request that the Court exercise its broad authority to enforce the terms of its Protective Order and compel the Securities Plaintiffs to take immediate steps to remedy their ongoing violations of the Order.

## EMERGENCY CONSIDERATION

56. Emergency consideration of this Motion is warranted because the Securities Plaintiffs improperly possess and are making improper use of the Reorganized Debtors' protected Discovery Material in violation of this Court's Protective Order. Despite repeated requests, the Securities Plaintiffs have refused to return or stop their improper and ongoing use of that protected Discovery Material in the Securities Litigation or other purposes. The Securities Plaintiffs likewise have failed to reveal other individuals or entities that may have received the Discovery Material. The Reorganized Debtors have an immediate and important interest in enforcing this Court's Protective Order and seeking return of their protected Discovery Material.

19

## CONCLUSION

For the foregoing reasons, the Reorganized Debtors respectfully request that the Court:

57. Grant the Motion and issue an order compelling the Securities Plaintiffs to comply with the Protective Order and immediately (a) return all improperly obtained Discovery Material and destroy any derivative works reflecting Discovery Material; (b) cease improperly using the Discovery Material in the Securities Litigation or for other purposes unrelated to the above-captioned bankruptcy cases; and (c) identify all other individuals or entities to whom they have disclosed Discovery Material; and

58. Grant any other such relief as the Court deems just and proper.

Houston, Texas
November 12, 2021


*/s/ Matthew D. Cavenaugh*

**JACKSON WALKER LLP**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Genevieve Graham (TX Bar No. 24085340)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:   (713) 752-4200
Facsimile:   (713) 752-4221
Email:       mcavenaugh@jw.com
             kpeguero@jw.com
             ggraham@jw.com

*Co-Counsel to the Reorganized Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Alexander J. Nicas (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       jsussberg@kirkland.com
             alexander.nicas@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Chad J. Husnick, P.C. (admitted *pro hac vice*)
A. Katrine Jakola, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       chad.husnick@kirkland.com
             katie.jakola@kirkland.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Kristin Rose (admitted *pro hac vice*)
555 South Flower Street
Los Angeles, California 90071
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500
Email:       kristin.rose@kirkland.com

*Co-Counsel to the Reorganized Debtors*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-1(i).

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh

## Certificate of Service

I further certify that on November 12, 2021, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, as well as by email and through the mail.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh