# EXHIBIT 10

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **WASHINGTON PRIME GROUP INC.,** | § | **Case No. 21-31948 (MI)** |
| **et al.,** | § | |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

**OBJECTION OF PRESUMPTIVE LEAD PLAINTIFF RANDY SLIPHER, INDIVIDUALLY, AND ON BEHALF OF PUTATIVE CLASS OF SIMILARLY SITUATED WASHINGTON PRIME GROUP, INC. SHAREHOLDERS, TO CONFIRMATION OF DEBTORS' AMENDED JOINT CHAPTER 11 PLAN <u>AS TO THIRD PARTY RELEASES</u>**

**[This Objection Relates to Docket No. 909]**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

Presumptive Lead Plaintiff Randy Slipher ("**Slipher**"), individually and on behalf of a putative class of similarly situated Washington Prime Group Inc. ("**WPG**") shareholders, as current and *former* holders of Existing Equity Interests (referred to herein the as "**Objecting Class Plaintiffs**"), by and through counsel, respectfully submits this objection to confirmation of the Debtors' Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 909 (as may be amended or modified, the "**Plan**")] in the above-captioned chapter 11 cases of WPG, *et al*. (collectively, the "**Debtors**") as it relates to impermissible releases, exculpation and injunction of third party claims (the "**Release Objection**").[1] As detailed below, the Court should deny confirmation of the Plan, or modify its third-party releases to carve out the claims asserted by Slipher and Objecting Class Plaintiffs.

---

[1] Capitalized terms used in this objection that are not defined herein are defined in the Plan.

1

## PRELIMINARY STATEMENT

1. The Plan impermissibly provides broad, nearly unqualified releases to *all* of WPG's current and former officers and directors (as well as numerous other third parties), purporting to release, exculpate and enjoin causes of action asserted by third parties, including Objecting Class Plaintiffs' class action claims against WPG Chief Executive Officer Louis Conforti ("**Conforti**") and Chief Financial Officer Mark Yale ("**Yale**") ("**Defendants**"). Yet none of WPG's officers and directors have filed for relief under the Bankruptcy Code, nor have they offered evidence of providing any consideration to Debtors. As such, the proposed third-party release runs afoul of the Fifth Circuit's consistent "pronounced [] opposition to such releases," holding that "a non-consensual, non-debtor discharge would not be available in this circuit." *Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1060 (5th Cir. 2012) (*"Vitro S.A.B."*); *In re Pac. Lumber Co.*, 584 F.3d 229, 252–53 (5th Cir. 2009) (observing that "[t]he fresh start § 524(e) provides to debtors is not intended" to provide for "non-consensual non-debtor releases and permanent injunctions").

2. Though the Plan does not disclose that Objecting Class Plaintiffs are releasing specific, already-asserted claims in pending litigation if they fail to execute the opt-out form, the Plan's proposed third-party releases, if approved, would not merely pertain to hypothetical unalleged claims, but also to already-asserted claims. On May 24, 2021, Slipher, for Objecting Class Plaintiffs, commenced a putative class action against WPG and its officers, Defendants Conforti and Yale, in the United States District Court for the Southern District of Ohio, Case No. 2:21-cv-02757 (the "**Class Action**"). The Class Action alleges that Defendants defrauded objecting Class Plaintiffs and breached duties under the Securities Exchange Act of 1934 ("**Exchange Act**") by failing to disclose to investors: (1) that WPG's financial condition was

2

deteriorating substantially; (2) that, as a result, there was substantial uncertainty about WPG's ability to meet its capital obligations as they became due; and (3) that, as a result of the foregoing, Defendants' positive statements about WPG's business, operations, and prospects were materially misleading and/or lacked a reasonable basis in fact.

3. Curiously, the Plan proposes broad third-party releases even though WPG has maintained, and the Plan assumes, a sizable directors and officers liability insurance program ("**D&O Insurance**"), which derivatively would provide value to WPG creditors. The Class Action seeks to recover from Defendants and the D&O Insurance, not from any of the Debtors' assets. Yet, the Plan represents an effort to cut off Objecting Class Plaintiffs' claims without ever adjudicating them on the merits, even though the D&O Insurance (which has been paid for) represents an ideal asset with which to provide Slipher and Objecting Class Plaintiffs with redress.

4. Attempting to overcome binding Fifth Circuit precedent, the Debtors purport to manufacture "consent" to their impermissible third-party releases through a construct in the Plan providing that these releases are effective unless the "Releasing Parties" take affirmative steps to opt-out of them. As detailed below, this effort to evade precedent through the use of an opt-out mechanism that neither provides many Objecting Class Plaintiffs with the requisite notice, nor is supported by consideration, fails. An illustrative deficiency of this mechanism is the fact that no notice has even been attempted to *former* holders of Equity Interests, whose claims are being released. Objecting Class Plaintiffs include former Equity Interests holders who sold their shares before bankruptcy. However, there is no indication that the Debtors provided notice to these individuals. The Plan ignores this deficiency, and purports to release these claims without requiring any notice to these claimholders.

5.      In sum, the Court should deny confirmation because the Plan contains extensive non-consensual third-party releases that are not supported by consideration and for which insufficient notice has been provided, the Debtors' opt-out sophistry notwithstanding. Confirmation of the Plan, without modification or removal of the third-party releases, would violate Fifth Circuit precedent.

## BACKGROUND

6.      Slipher and Objecting Class Plaintiffs are WPG shareholders and hold unliquidated, unsecured claims against Defendants. On May 24, 2021, Slipher commenced the Class Action, individually and on behalf of Objecting Class Plaintiffs, to wit, persons and entities that purchased or otherwise acquired WPG securities between November 5, 2020 and March 4, 2021, inclusive (the "**Class Period**"). Thus, the Class Action properly includes both individuals and institutions who still own Existing Equity Interests, as well as those who disposed of those interests, so long as they purchased during the Class Period. *Cf. Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("If the purchaser sells later after the truth makes its way into the marketplace, an initially inflated purchase price might mean a later loss.") (emphasis in original). The Class Action alleges that Defendants Conforti and Yale defrauded Objecting Class Plaintiffs and breached duties under the Exchange Act of by misrepresenting and failing to disclose to investors: (1) that WPG's financial condition was deteriorating substantially; (2) that, as a result, there was substantial uncertainty about its ability to meet its capital obligations as they became due; and (3) that, as a result of the foregoing, Defendants' positive statements about WPG's business, operations, and prospects were materially misleading and/or lacked a reasonable basis in fact. These material misrepresentations and omissions caused Slipher and Objecting Class Plaintiffs to purchase WPG securities at artificially inflated prices and they were damaged when the truth was

4

revealed. Had Defendants not defrauded Slipher and the Objecting Class Plaintiffs, they could have acquired an equivalent amount of stock at a substantially lower cost. Slipher timely moved in the Class Action to be appointed the lead plaintiff for Objecting Class Plaintiffs under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4. Though the Class Action remains in its infancy, the lone competing movant in the Class Action has conceded that Slipher's motion should be granted and that he should be appointed the lead plaintiff.

7. Several weeks after the Class Action was commenced, on June 13, 2021, WPG and 88 affiliated Debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

8. WPG is a self-managed and self-administered real estate investment trust that owns properties and manages retail real estate across the United States through Washington Prime Group, L.P.

9. In their First Day Motions, Debtors sought and received the Court's permission to continue to pay approximately $4.6 million in D&O Insurance premiums to seven different insurance companies that have issued D&O policies to WPG and its officers and directors. [Docket Nos. 12, at 6; 271 at 2.] By the Plan Supplement, the Debtors reserved all rights against these insurance companies and in respect to the Class Action. [Docket No. 876, at 54 (listing reserved claims against all seven insurance companies who issued the D&O Insurance); *id.*, at 64 (reserving all claims and defenses, cross-claims and counter claims in respect to the Class Action)].

10. The Debtors also sought and obtained the Court's permission to waive the requirement to file a list of equity security holders in connection with these proceedings. [Docket No. 24.] They argued therein that:

> WPG Inc. is a publicly traded company with approximately 24 million outstanding shares of common stock and recent average trading volumes of more than 1.3 million shares daily.

5

It is not practicable for WPG Inc. to maintain a list of its equity security holders that includes public holders, as equity security holders routinely trade in and out of the stock. Additionally, the Debtors do not have access to information about the underlying individuals and entities that hold their stock through a nominee.

*Id.*, at ¶ 12.

11.     Thus, no list of equity holders has been posted and, generally, no efforts to provide them directly with notice of the Class Action or its particulars has been made.

12.     On July 12, 2021, the Debtors filed the Plan, which was subsequently amended on August 24 and 25, 2021 [Docket Nos. 893, 909].

13.     Under the Plan, as of the Effective Date, the Debtors "shall be deemed to have assumed all of the [D&O Insurance] (including, if applicable, any "tail policy") and any agreements, documents, or instruments relating thereto." Plan, Art. V, F. After the Effective Date, the Debtors may not "terminate or otherwise reduce the coverage under any such policies (including, if applicable, any "tail policy") with respect to conduct occurring as of the Effective Date." *Id*.

14.     The Plan proposes grossly overbroad, impermissible, non-consensual, third-party releases, exculpations, and injunctions.

15.     Chief among this overbreadth is the Plan's proposal to release causes of action held by Objecting Class Plaintiffs against current WPG directors and officers—specifically Class Action Defendants CEO Conforti and CFO Yale–which are likely covered by D&O liability coverage under the D&O Insurance, which derivatively could provide value.

16.     The third-party release provision of the Plan reads as follows:

Effective as of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, to the fullest extent permissible under application law, as such law may

6

be extended or integrated after the Effective Date, on and after the Effective Date each of the Releasing Parties[2] shall be deemed to have to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each of the Released Parties from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities, whatsoever, whether known or unknown, foreseen or unforeseen, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law (or any applicable rule, statute, regulation, treaty, right, duty, or requirement), equity, contract, tort, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Reorganized Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), **the purchase, sale, amendment, or rescission of any security of the Debtors** or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the 2015 Credit Facility, the 2018 Credit Facility, the Weberstown Term Loan Facility, the 2020 Amendments, the Unsecured Notes, the Chapter 11 Cases, any Avoidance Action, the Restructuring Support Agreement, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the Restructuring Support Agreement, the Disclosure Statement, the DIP Facility, the DIP Documents, the Exit Facilities, the Exit Facility Documents, New Common Equity, the Bidding Procedures, the Equity Rights Offering, the Backstop Commitment Agreement, the New Governance Documents, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Equitization Restructuring, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the foregoing (including, for the avoidance of doubt, providing any legal opinion

---

[2] "Releasing Parties" is defined as "collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each of the Company Parties; (d) each of the Consenting Stakeholders; (e) the 2015 Lenders; (f) the 2018 Lenders; (g) the Weberstown Lenders; (h) the Unsecured Noteholders; (i) the Ad Hoc Lender Group, and each member thereof; (j) the Plan Sponsor; (k) the DIP Lenders; (l) the DIP Agent; (m) the Exit Facility Lenders (n) each of the Agents/Trustees; (o) each Backstop Party; (p) each Equity Rights Offering Participant; (q) each Holder of a Claim; (r) each Holder of an Interest; (s) each current and former Affiliate of each Entity in clause (a) through the following clause (t); and (t) each Related Party of each Entity in clause (a) through this clause (t); provided that an Entity shall not be a Releasing Party if, in the cases of clauses (q) through (t) and each current and former Affiliates thereof, if such Entity: (1) elects to opt out of the releases contained in the Plan; or (2) timely files with the Bankruptcy Court, on the docket of the Chapter 11 Cases, an objection to the releases contained in the Plan that is not resolved before Confirmation." Plan, Art. I, 183. This definition incorporates the defined term "Related Parties", which is defined as "each of, and in each case in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or special committee member or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees." *Id.*, Art. I, 181.

requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the New Common Equity, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act, or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any obligations arising on or after the Effective Date of any party or Entity under the Plan, the Confirmation Order, the Exit Facility Documents, the Equity Rights Offering, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the assumption of the Indemnification Provisions as set forth in the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions (including the Equitization Restructuring), and implementing the Plan; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party. Release.

Plan, Art. VIII.E. (emphasis added) (hereafter the "**Third-Party Release**").

17.     The Plan's definition of "Releasing Parties" includes Slipher and the Objecting Class Plaintiffs as holders of a claim and/or interest "based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), **the purchase, sale, amendment, or rescission of any security of the Debtors . . . ."** Plan, Art. I, 183; Art. VIII.E (emphasis added).

18.     Slipher and the Objecting Class Plaintiffs hold causes of action against certain Released Parties that arise from "the purchase, sale, amendment, or rescission of any security of the Debtors" and are thus potentially subject to the Third-Party Release.

8

19.     Slipher and the Objecting Class Plaintiffs do not consent to (and object to) being forced to release their claims against current WPG directors and officers—specifically Class Action Defendants CEO Conforti and CFO Yale, both of whom are covered by the D&O Insurance.

20.     The Plan also proposes exculpating numerous third parties who were neither responsible for Debtors' pre-petition debts nor provided Debtors with a beneficial service or acted in a fiduciary role.

21.     The Exculpation Clause reads as follows:

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the formulation, preparation, dissemination, negotiation, entry into, or filing of, as applicable, the Chapter 11 Cases, the Disclosure Statement, the Exit Facility Documents, the DIP Documents, the New Governance Documents, Restructuring Support Agreement, the Equitization Restructuring, the Plan, the Disclosure Statement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the Equity Rights Offering, the Backstop Commitment Agreement, the New Common Equity, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release or exculpate any Claim relating to any post-Effective Date obligations of any party or Entity under the Plan, the Equitization Restructuring, the Exit Facilities, or any document, instrument, or agreement (including the Restructuring Documents, and other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan.

Plan, Art. VIII, F.

22.     The Plan defines "Exculpated Parties" as follows:

(a) each of the Debtors; (b) each of the Reorganized Debtors; (c) each of the Consenting Stakeholders; (d) each of the Consenting 2015 Lenders; (e) each of the Consenting 2018 Lenders; (f) each of the Consenting Weberstown Lenders; (g) each of the Consenting Unsecured Noteholders; (h) the Ad Hoc Lender Group, and each member thereof; (i) the Plan Sponsor; (j) the Committee, and each member thereof; (k) the OEC, and each member thereof; (l) each each of the Agents/Trustees; (m) the DIP Agent; (n) each of the DIP Lenders; (o) each Backstop Party; (p) each Equity Rights Offering Participant; (q) each current and former Affiliate of each Entity in clause (a) through the following clause (r); and (r) each Related Party of each Entity in clause (a) through this clause (q).

Plan, Art. I, 112.

23.     Finally, the Plan proposes an overbroad injunction clause, which would permanently enjoin causes of action against all Exculpated and Released Parties. Plan, Art. VIII, G.

24.     The Injunction Provision reads as follows:

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or the Confirmation Order, for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests

10

unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.G.

Plan, Art. VIII, G.

## ARGUMENT

I. **THE PLAN CANNOT BE CONFIRMED BECAUSE IT INCORPORATES IMPERMISSIBLE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS.**

A. **The Release of Third Parties' Causes of Action against Third Parties Is Non-Consensual.**

25. Under Section 524(e) of the Bankruptcy Code the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Consistent with this rule, in this Circuit, a bankruptcy court may not confirm a plan that provides non-consensual non-debtor releases. *Vitro S.A.B.*, 701 F.3d 1031, 1061-62; (5th Cir. 2012); *In re Pacific Lumber Co* 584 F.3d 229, 251-252 (5th Cir. 2009) ("*Pacific Lumber*") (largely striking down non-debtor releases); *Dropbox, Inc. v. Thru, Inc., et al. (In re Thru, Inc.)*, 2018 U.S. Dist. LEXIS 179769, 2018 WL 5113124, *23 (N.D. Tex. Oct. 19, 2018) (holding that the bankruptcy court's approval of non-debtor releases, a permanent injunction, and exculpation provisions was "clear error.").

26.     Here, despite these pronouncements, the Plan contains broad release of estate claims, as well as causes of action held by, and against, third parties. *See* Plan, Art. VIII.E. Under the Plan, numerous third parties, including the Debtors' current and former officers, directors and managers (i.e. Defendants Conforti and Yale) are Released Parties. Plan, Art. I.A. 182. For each Released Party, the Plan also releases the following "Related Parties":

> **current and former directors, managers**, **officers**, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or special committee member or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

Plan, Art. I, 177 (emphasis added).

27.     This expansive Third-Party Release is non-consensual. Because Slipher and Objecting Class Plaintiffs object to it, it cannot be confirmed. *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 116 (Bankr. N.D. Tex. 2002); *In re LP*, 442 B.R. 537, 541 (Bankr. S.D. Tex. 2010) (treating a release as non-consensual based on an objection to it).

28.     Further, while Slipher has received notice of the bankruptcy, and, as such, this opportunity to be heard, most members of the Objecting Class Plaintiffs (the remainder of the putative class), who on information and belief number in the thousands, have received no such notice. *Cf. Zeidman v. J. Ray McDermott Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) (noting that "any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded" such as WPG common stock, "must necessarily be 'so numerous that joinder of all members is impracticable.'"). As detailed

above, many of these Objecting Class Plaintiffs sold their shares before the commencement of this proceeding, and so have no reason to be aware of this bankruptcy in the absence of notice.

29.     While Debtors seek to evade Fifth Circuit precedent, by attempting to establish that the releasing parties here have "consented" to the releases, their attempts are unavailing. Merely not opting out of a proposed release is legally insufficient to establish "consent" to the release. "Courts generally apply contract principles in deciding whether a creditor consents to a third-party release." *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017). Accordingly, "as a matter of law, when a party is unilaterally informed of [a contract term], 'mere failure to object within a reasonable time . . . , without more, could not establish an agreement between the parties.'" *In re Couture Hotel Corp.*, 554 B.R. 369, 381 (Bankr. N.D. Tex. 2016) (quoting *Triton Oil and Gas Corp. v. Marine Contractors and Supply Inc.*, 664 S.W.2d 443, 445 (Tex. 1982)). "'[A] meeting of the minds is an essential element of an implied-in-fact contract.'" *Id*. (quoting *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 49 (Tex. 2008).)

30.     Here, Debtors have *not* submitted a list of secured equity holders to the Court, nor have they contended that they have otherwise given these equity holders notice of the Third-Party Release or its proposed impact on the Class Action. The absence of such notice renders the proposed release of the Objecting Class Plaintiffs' claims non-consensual. Crediting a similar argument, the court in *In re Chassix Holdings, Inc.*, held that "[c]harging all inactive creditors with full knowledge of the scope and implications of the proposed third-party releases and implying a 'consent' to the third-party releases based on the creditors' inaction, is simply not realistic or fair and would stretch the meaning of 'consent' beyond the breaking point." *In re Chassix Holdings, Inc.*, 533 B.R. 64, 81 (Bankr. S.D.N.Y. 2015). Indeed, the Debtors offer no reason that any of

13

Objecting Class Plaintiffs would consent to the Third-Party Release as it is against their interest to do so.

31.     Releasing putative class claims against third parties, especially officers and directors such as Defendants Conforti and Yale, without meaningful notice to the putative class (*i.e.,* Objecting Class Plaintiffs) also runs afoul of the principles of class action law and principles of due process. Confirmation of the Plan would effectively adjudicate Objecting Class Plaintiffs' class claims while providing a substantially lower quantum of notice than required for class members upon certification of a class action under Fed. R. Civ. P. Rule 23(c)(2), which governs notice to class members, and requires "the best notice [to class members] that is practicable."[3]

32.     Without such notice, the Third-Party Release cannot be deemed consensual as to Objecting Class Plaintiffs. Thus, at a minimum, the Court should exclude Objecting Class Plaintiffs' claims from the scope of the releases.

33.     The Court can rectify the issue this by adding the following provision: Notwithstanding anything to the contrary in the Plan, none of the claims alleged in the Class Action shall be deemed released, exculpated or enjoined as to any party except for those entities that are parties to this Plan. Further, for the avoidance of doubt, the Court should add a provision to the definition of "Released Parties" clarifying that the non-Debtor defendants in the Class Action, in their capacity as such, are not "Released Parties" under the Plan.

---

[3]Similarly, courts emphasize that in order to comport with requisite due process, notice to class members of a class-action settlement must provide "a succinct description of the substance of the action and the parties' positions." *See In re Vitamin C Antitrust Litig.*, 2012 U.S. Dist. LEXIS 152275, 2012 WL 5289514, at \*8 (E.D.N.Y. Oct. 23, 2012) (citing *In re Payment Interchange Fee & Merch. Discount Antitrust Litig.*, 2008 WL 115104 (E.D.N.Y. Jan. 8, 2008)).

**B.      The Proposed Releases Are Neither Integral Nor Given for Consideration**

34.      Even if the releases here were consensual, a Court may approve a plan containing such releases only where they are supported by consideration. *See, e.g.*, *In re Wool Growers Cent. Storage Co.* ("*Wool Growers*"), 371 B.R. 768, 775–76 (Bankr. N.D. Tex. 2007) ("Consensual nondebtor releases that are specific in language, integral to the plan, a condition of the settlement, and given for consideration do not violate section 524(e)."). Here, Slipher and Objecting Class Plaintiffs have not received, and there is no evidence that the third parties have provided, consideration for these releases.

35.      Although the Third-Party Release contains a generalized recitation of consideration, Debtors have not shown what consideration, if any, these diverse groups of Released Parties have given in exchange for the release. While the Disclosure Statement states generally that consideration has been given to support the Equitization Restructuring, it fails to explain what specific consideration any individual Released Party has provided or why that makes the release integral, particularly in light of the Debtors' assumption of the D&O Insurance at a cost of almost $5 million.

36.      As to the individual Class Action Defendants, Conforti and Yale, for example, there is no assertion, let alone evidence, that they have provided consideration for their release. Yet, they are unquestionably substantial beneficiaries of the D&O Insurance that Debtors have continued to pay and propose to assume.

37.      At this stage, no discovery has yet been taken nor has any evidence been offered that could allow the Court to discern whether these third parties actually provided consideration in exchange for these releases. Thus, there is no basis to confirm a Plan containing such a release. *See In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (striking releases in a plan except

15

for claims "that are property of the Estate in consideration for funding of the Plan by Amegy");
*Wool Growers*, 371 B.R. at 776.

38. Accordingly, for the reasons set forth above, the Court should deny confirmation because the Plan contains extensive non-consensual third-party releases that are not supported by consideration. Accordingly, given the non-consensual nature of such releases, confirmation would violate Fifth Circuit precedent.

## C. The Exculpation Provision Is Overly Broad.

39. As described above, Article VIII.F of the Plan contains the Exculpation Provision, which impermissibly exculpates an extensive list of third parties from liability. Fifth Circuit precedent limits which third parties are entitled to the protection of exculpation. *Pacific Lumber*, *supra*, 584 F.3d at 252. In *Pacific Lumber*, the court struck down an exculpation clause that would have insulated non-debtors, including debtors' officers and directors, from negligence during the course of the bankruptcy. *Id*. at 251. The only non-debtors it extended this protection to were parties who were co-liable with debtors on pre-petition debts and the members of the disinterested Creditors' Committee, holding that such members have qualified immunity for their actions within the scope of their duties. *Id*. at 253.

40. The Exculpated Parties here do not fall within the limited exceptions articulated in in *Pacific Lumber*. Instead, they include, in addition to Debtors: Reorganized Debtors; Consenting Stakeholders; Consenting 2015 Lenders; Consenting 2018 Lenders; Consenting Weberstown Lenders; Consenting Unsecured Noteholders; Ad Hoc Lender Group, and each member thereof; Plan Sponsor; the Committee, and each member thereof; the OEC, and each member therof; each of the Agents/Trustees; the DIP Agent; each of the DIP Lenders; each Backstop Party; each Equity Rights Offering Participant; each current and former Affiliate of each Entity; and Related Parties,

including of each Entity, which includes, but is not limited to, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, and subsidiaries of each Entity.

41.  The Plan does not contend that any of the Exculpated Parties are either co-liable with the Debtors, nor that they serve a disinterested role in the bankruptcy for which they deserve immunity.

42.  Further, like the Third-Party Release, the Exculpation provision is non-consensual and thus a plan containing it may not be confirmed over objection. *In re Bigler LP*, *supra* 442 B.R. at 541.

43.  The Fifth Circuit does not permit the confirmation of plans that exculpate such broad classes of non-debtors. The Plan cannot be confirmed with this clause.

### D.  The Injunction Provision is Impermissibly Broad

44.  As described above, Article VIII.G of the Plan contains the Injunction Provision. This provision seeks to permanently enjoin all causes of actions by "all Entities that have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties…" Plan, Art. VIII, G. This clause enjoins claims against both Exculpated and Released parties; Slipher and the Objecting Class Plaintiffs cannot necessarily avoid the extinguishment of claims by opting out of the Third-Party Release. Such permanent

17

injunctions that effectively release third parties from liability are prohibited in the Fifth Circuit. *Felds v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995) (*"Zale"*).

45.      In *Zale*, two non-debtors challenged a permanent injunction over any claims held by a non-debtor. The Court found that such an injunction permanently released a non-debtor from a debt it potentially owed a creditor, and thus violated Bankruptcy Code § 105. *Id*. at 760; *see also Vitro S.A.B., supra,* 701 F.3d 1031 at 1066 (acknowledging that the Fifth Circuit does not permit non-consensual permanent injunctions of claims against third parties). The same is true here; specifically, the Injunction Provision would act as a secondary barrier to claims that the Third-Party Release and Exculpation Provision seek to release.

46.      For the foregoing reasons, the Court may not confirm the Plan's non-consensual permanent injunction over claims against third parties.

## II.    THE PLAN CANNOT RELEASE CLAIMS COVERED BY D&O INSURANCE BECAUSE THE COURT CANNOT YET DETERMINE WHETHER THESE POLICIES ARE PART OF THE BANKRUPTCY ESTATE

47.      The Third-Party Release would release Objecting Class Plaintiffs' claims against Defendants Conforti and Yale, but these claims may be covered by the Debtors' D&O insurance, the proceeds of which may not be part of the bankruptcy estate.

48.      The Fifth Circuit has clearly held that "when a debtor corporation owns a liability policy that exclusively covers its directors and officers, . . . the proceeds of that DO policy are not part of the debtor's bankruptcy estate." *Matter of Vitek, Inc*., 51 F.3d 530, 535 (5th Cir. 1995) (citing *In re Louisiana World Exposition*, 832 F.2d 1391, 1339 (5th Cir. 1987).) Nor does it make sense to allow an insurer to escape coverage for injuries cause by its insured merely because the insured receives a bankruptcy discharge. *In re Edgeworth*, 993 F.2d 51, 54 (5th Cir. 1993). As the

18

Fifth Circuit explained, "[t]he 'fresh-start' policy is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunates of the insured." *Id.*

49.    D&O policies that provide coverage for the Debtors as well as their directors and officers *may* be part of the bankruptcy estate, but such a determination requires a fact-intensive analysis that would require review of the policies from each of the seven companies with which Debtors have a D&O policy.

50.    No discovery has yet been conducted and Debtors have not produced the D&O Insurance policies, so the Court cannot presently discern whether the D&O Insurance policies or their proceeds are part of the bankruptcy estate.

51.    It is thus premature to release any claims covered by the D&O Insurance policies. The Court may not confirm a plan that releases claims whose payment likely will not implicate the bankruptcy estate.

## CONCLUSION

WHEREFORE, Slipher and the Objecting Class Plaintiffs respectfully request that the Court: (a) deny confirmation of the Debtors' Plan or modify the Plan to remove the impermissible Third-Party Release and exculpation and injunction provisions; and (b) grant such other and further relief the Court deems just and proper.

Dated: September 1, 2021

Respectfully submitted,

**POLSINELLI PC**

By: */s/ Liz Boydston*
Liz Boydston (SBN 24053684)
1000 Louisiana Street, Suite 6400
Houston, Texas 77002
713.374.1667 (telephone)
713.374.1601 (fax)
lboydston@polsinelli.com

*and*

THE WAGNER FIRM
Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 491-7949
Facsimile: (310) 694-3967
avi@thewagnerfirm.com

*and*

GLANCY PRONGAY & MURRAY LLP
Robert Prongay
Ex Kano Sams
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
RProngay@glancylaw.com
esams@glancylaw.com

**COUNSEL TO PRESUMPTIVE LEAD
PLAINTIFF RANDY SLIPHER,
INDIVIDUALLY, AND ON BEHALF OF
PUTATIVE CLASS OF SIMILARLY
SITUATED WASHINGTON PRIME GROUP,
INC. SHAREHOLDERS
"OBJECTING CLASS PLAINTIFFS"**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court and served through the CM-ECF system to all counsel of record registered to receive a Notice of Electronic Filing for this case on the 1st day of September 2021.

By:    /s/ Liz Boydston