# EXHIBIT 11

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **WASHINGTON PRIME GROUP** | § | **Case No. 21-31948 (MI)** |
| **INC., et al.,** | § | |
| | § | |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

**SECURITIES PLAINTIFFS' OPPOSITION**
**TO THE REORGANIZED DEBTORS' EMERGENCY MOTION**
**TO COMPEL COMPLIANCE WITH THIS COURT'S PROTECTIVE ORDER**

[This Objection Relates to Docket No. 1161]

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

The Securities Plaintiffs[1] oppose the Reorganized Debtors' November 12, 2021 emergency motion (the "**Emergency Motion**") and respectfully request that this Court deny it.

## I. INTRODUCTION

1. In their Emergency Motion, which they filed on only one-half a business day's notice, the Reorganized Debtors assert that emergency relief is necessary. The Reorganized Debtors, however, fail to articulate *any* specific emergency. At bottom, they challenge the fact that the Securities Plaintiffs – comprising the Lead Plaintiff and counsel in the Securities Litigation – filed a motion **to file** a complaint *under seal* (the "**Motion to Seal**") on November 1, 2021 that quotes from two deposition transcripts in this matter. The Reorganized Debtors fail to explain why such sealing is undesirable. In fact, the Emergency Motion fails to address the quoted material in any way.

---

[1] Capitalized terms not defined herein use the definitions employed in Reorganized Debtors' moving papers. Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

1

2.     In truth, there is no emergency. On November 9, 2021 – three days before the Reorganized Debtors filed the Emergency Motion – the Securities Plaintiffs offered to defer briefing on the Motion to Seal in order to allow for an orderly resolution of the parties' dispute. But the Reorganized Debtors rejected the offer and, without conferring further, filed the Emergency Motion three days later. Thus, any emergency is solely the product of the Reorganized Debtors' failure to take the Securities Plaintiffs up on their offer of a standstill and orderly resolution.

3.     Additionally, as detailed below, the Reorganized Debtors have failed to establish any violation of the Protective Order in this matter.  The Emergency Motion also fails to establish that any truly confidential information is being used or that any harm has been or will be caused to the Reorganized Debtors. For each of these reasons, the Court should deny the Emergency Motion.

## II.     STATEMENT OF RELEVANT FACTS

4.     On May 24, 2021, the Securities Plaintiffs commenced the Securities Litigation.

5.     On June 13, 2021 (the "**Petition Date**"), Washington Prime Group Inc. ("**WPG**") and 88 affiliated Debtors (with WPG, the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code commencing their Chapter 11 cases (these "**Cases**").

6.     On September 1, 2021, the Securities Plaintiffs timely filed Docket No. 972, their *Objection Of Presumptive Lead Plaintiff Randy Slipher, Individually, And On Behalf Of Putative Class Of Similarly Situated Washington Prime Group, Inc. Shareholders, To Confirmation Of Debtors' Amended Joint Chapter 11 Plan As To Third Party Releases* (the "**Objection**").

2

7.　　On September 3, 2021, the Debtors and the Securities Plaintiffs resolved the Objection by adding language to the Plan to allow the Securities Litigation to continue, and the Debtors confirmed their Plan.

8.　　The Securities Plaintiffs are pursing claims in the Securities Litigation for violations of the Securities Exchange Act of 1934 against the Reorganized Debtors' Former Chief Executive Officer ("CEO") Louis Conforti and its current interim CEO Mark Yale. The Securities Plaintiffs allege that Defendants Conforti and Yale recklessly defrauded investors regarding the Reorganized Debtors' financial condition in the months leading up to these proceedings. When the truth was disclosed, leading the Reorganized Debtors to commence these Cases, the Securities Plaintiffs suffered tens of millions of dollars in damages due to the diminution in value in the Reorganized Debtors' securities.

### A.　　The Securities Plaintiffs Object to the Debtors' Proposed Releases, Obtain "Professionals' Eyes Only" Information, and Resolve the Objection

9.　　In their initially-proposed and amended Plans, the Debtors sought to extinguish all of Securities' Plaintiffs' claims – and those of the putative class they represent – through broad third-party releases that were not supported by consideration. The Securities Plaintiffs filed the Objection, Docket No. 972, and appeared at the confirmation hearing.

10.　　Following the Objection, the Debtors, through counsel, shared certain insurance information that they designated "Professionals' Eyes Only." *See* **Exhibit 1**, hereto (cover email without attachments). That the Reorganized Debtors now take issue with the Securities Plaintiffs possessing "Professionals' Eyes Only" information is surprising.

11.　　The Securities Plaintiffs also received deposition transcripts from counsel for the Equity Committee. As detailed in the **Declaration of Avi Wagner**, filed herewith as **Exhibit 2**, counsel for the Equity Committee made no mention of any confidentiality designation before

3

sharing the transcripts. However, upon realizing that they were designated Professionals Eyes'
Only/Confidential under the Protective Order, Mr. Wagner promptly executed the requisite
declaration under the Protective Order.[2]

12. The Securities Plaintiffs appeared through counsel at the September 3, 2021
confirmation hearing. *See* Docket Entry No. 1014. The parties resolved their dispute through the
inclusion of new Paragraph 80 in the confirmed Plan (Docket Entry No. 1021, ¶80), which includes
language protecting the Securities Plaintiffs' claims and the Securities Litigation:

> 80. Nothing in the Plan or this Confirmation Order shall prejudice, release,
> exculpate, or enjoin any rights of the Objecting Class Plaintiffs….
> provided that the Objecting Class Plaintiffs may collect solely and
> exclusively from the proceeds of the available D&O Insurance (as defined
> in the Slipher Objection), to the extent such proceeds are available, at no
> cost to the Debtors or their Estates, or any individual named as a defendant
> in the Class Action; provided, further, that nothing herein shall impair the
> rights of any individual named in the Class Action from seeking to be
> indemnified by the Debtors, to the extent necessary…

Thus, the Reorganized Debtors knew and understood that the Securities Plaintiffs continue to
pursue their claims.

13. <u>Significantly, the Reorganized Debtors bear no potential liability to the Securities
Plaintiffs</u>.

**B. The Motion to Seal Remains Pending in the Securities Litigation**

14. Testimony from the Conforti and Yale Deposition Transcripts regarding the
Reorganized Debtors' publicly disclosed pre-petition capital structure and employee compensation
plan supports the Securities Plaintiffs' allegations in the Securities Litigation that Defendants

---

[2] Contrary to counsel for the Equity Committee's assertion, they did not inform the Securities Plaintiffs or their counsel
about how the transcripts were designated or inquire about the Protective Order. Nonetheless, once counsel discovered
the designations, counsel executed the Declaration under the Protective Order. Further, Paragraph 13 of the Protective
Order provides in pertinent part: "[e]ach such Declaration shall be retained in the files of counsel for the Party who
gave access to the Designated Material to the person who was provided such access. Such executed Declarations shall
not be subject to disclosure under the Federal Rules or the Bankruptcy Rules unless a showing of good cause is made
and the Court so orders." Protective Order at 8, ¶13.

Conforti and Yale recklessly defrauded shareholders. Accordingly, the Securities Plaintiffs quoted their relevant testimony in the Complaint, **_which has not been filed, and for which _they filed a_ _Motion to Seal _on November 1, 2021**. *See* Exhibit B to the Emergency Motion. The Securities Plaintiffs filed the Motion to Seal **because of** the Reorganized Debtors' designation of the Deposition Transcripts. The court in the Securities Litigation has not ruled on the Motion to Seal. As detailed in Section II.C., below, Securities Plaintiffs offered to defer resolution of that motion.

15.     The Securities Plaintiffs are prepared to provide the unfiled Complaint to this Court for *in camera review* so that this Court can see that the unfiled Complaint **does not contain any information, even were the Complaint not sealed, that would harm the Reorganized Debtors**. For example, the quotations from Conforti and Yale do not include references to any trade secrets, proprietary information, or other information that would be validly deemed confidential, especially post-confirmation and plan effectiveness. Nor do they discuss the Reorganized Debtors' current capital structure and/or employee compensation plan in any way.

## C. The Securities Plaintiffs Offered and Continue to Offer to Efficiently Resolve the Dispute

16.     Between November 1, 2021 and November 9, 2021, the Securities Plaintiffs, counsel for Defendants in the Securities Litigation, and counsel for the Reorganized Debtors' exchanged correspondence and participated in two telephone calls. During the second call, as memorialized in the Securities Plaintiffs' November 9th letter to the Reorganized Debtors, the Securities Plaintiffs offered:

> as we stated during our telephone call this evening, in order to streamline the resolution of any dispute, we propose that: (1) the Defendants to the [Securities Litigation] may request, with Plaintiffs' consent, that the Court defer Defendants' response to both the Motion to Seal and to the Complaint until 30 days after the parties inform the Court in the [Securities Litigation] that they have reached an impasse; and (2) the parties further confer and, if necessary, seek judicial resolution of the issues you have raised. We

understand that Mr. Lechtman [counsel for Defendants] is discussing this proposal with his clients.

**Exhibit I** to the Emergency Motion, at 3.

17. Neither the Reorganized Debtors nor the Defendants in the Securities Litigation agreed to the offer to compromise, and neither further conferred. Instead, the Reorganized Debtors proceeded with the Emergency Motion.

### III.   ARGUMENT

#### A.   There is No Emergency

Since the Securities Plaintiffs offered to defer briefing on the Motion to Seal and delay of filing the Complaint—and because no confidential or protected information has been disclosed—there is simply no emergency, much less one that requires a motion being noticed on less than one business day's advance notice. This Court's Procedures provide that "[e]xcept for motions for relief from the stay, you must select a date that is at least 23 days from the date that you file a motion." Court Procedures, ¶5(a). Additionally, pursuant to Local Rule 9013-1(i) of the Bankruptcy Local Rules, an emergency motion "must include a detailed statement why an emergency exists, and the date relief is needed to avoid the consequences of the emergency," and "[t]he motion seeking an emergency hearing must be certified for its accuracy by the party seeking the emergency relief or by its counsel."

The Reorganized Debtors' Emergency Motion—and, in particular, ¶56 of the Emergency Motion—fails to satisfy these requirements. Indeed, given the Securities Plaintiffs' offer to preserve the status quo, there was no threat of a future emergency. Thus, the Emergency Motion constitutes a thinly veiled attempt to circumvent the Court's Procedures and the Bankruptcy Local Rules to feign an "emergency" to prevent the Securities Plaintiffs from obtaining the time to respond provided through a regularly-noticed motion.

Additionally, even a cursory review of the unfiled Complaint demonstrates the relevance of the Deposition Transcripts, which provide strong evidence that Defendants Louis Conforti and Mark Yale committed securities fraud. The Reorganized Debtors remarkably imply that Defendants Louis Conforti's and Mark Yale's deposition testimony in this matter should somehow inoculate their fraud. Yet, securities plaintiffs frequently rely on bankruptcy testimony to show fraud. *See, e.g.*, *In re: Horsehead Holdings, Sec. Litig.,* (D. Del. Oct. 4, 2018) (rejecting defendants' critique of plaintiffs' reliance on "certain statements that Hensler made during the bankruptcy proceeding"); *Rand-Heart of New York, Inc. v. Dolan*, 812 F. 3d 1172, 1178 (8th Cir. 2016) (in reversing the dismissal of securities fraud complaint, the Court of Appeals relied on the bankruptcy testimony of the Debtors' operating subsidiary's COO).

Finally, even if the unfiled Complaint were filed and sealed, the Reorganized Debtors have failed to identify any harm. Through their Motion to Seal, the Securities Plaintiffs have requested that the quotations from the Deposition Transcripts at issue to be sealed and/or redacted. In any event, **the Deposition Transcripts do not include information harmful to the Reorganized Debtors, who, under the terms of the Plan, do not have liability to the Securities Plaintiffs**.

Accordingly, the Court should decline to hear the Emergency Motion on an emergency basis and afford the parties appropriate time to more fully brief the issues presented and to act with due deference to scarce judicial resources.

### B. The Securities Plaintiffs Did Not Improperly Acquire the Deposition Transcripts

When counsel for the Equity Committee provided the deposition transcripts, there was no mention of any confidentiality designations or the protective order. Simply put, as detailed in the Declaration of Avi Wagner, filed herewith, there was no deception. In fact, Mr. Wagner executed the requisite declaration promptly upon becoming aware of the Protective Order.

### C.    The Securities Plaintiffs Have Not Misused the Deposition Transcripts in Issue

Ironically, the gravamen of the Reorganized Debtors' grievance is that the Securities Plaintiffs <u>sought to</u> *seal* the transcripts in question. The Protective Order, however, does not limit the use of the Deposition Transcripts in the manner that the Reorganized Debtors assert. The Protective Order provides in pertinent part:

> WHEREAS, there are, or may be, judicial or other proceedings, including but not limited to investigations, contested matters, adversary proceedings and other disputes (each a "Dispute" and, collectively, the "Disputes") arising out of or relating to the Debtors' filing of voluntary petitions under chapter 11 of title 11 of the United States Code, U.S.C. §§ 101-1532 (the "Bankruptcy Code") in this Court (the "Cases" ).

Protective Order at 1-2.1

The Reorganized Debtors interpret the phrase "in this Court" (which notes the fact that the Debtors in fact filed in the Southern District of Texas) to mean that material designated under the Stipulated Protective Order may somehow only be used in "Disputes," which is separately defined, that are pending before the Southern District of Texas. This interpretation of the Protective Order is incorrect and is belied by the Protective Order's terms.

None of the Protective Order's terms require "Disputes" to be pending in the Southern District of Texas. The term "Disputes" contains no restriction as to forum, but rather forms a part of the term "Cases" and expressly includes matters "arising out of or relating to" the Debtors' bankruptcy filing. The Securities Litigation falls within this provision since: (1) the Debtors tried to have the claims therein released under the Plan; (2) Paragraph 80 in the confirmed Plan (Docket Entry No. 1021, ¶80) allows the Securities Litigation to proceed and any recovery to be against the Debtors' D&O Policies; and (3) the allegations of loss causation in the Securities Litigation relate directly to the commencement of these Cases and its predicate. Further, the Protective Order also acknowledges the possibility of actions pending in an "other applicable court" (*i.e.* not the

8

bankruptcy court). Protective Order at 11, ¶22. "Those provisions [of the Protective Order] cannot be read to be meaningless . . . ." *Ross Neely Sys., Inc. v. Navistar, Inc.*, No. 3:13-CV-1587-M-BN, 2015 WL 12916405, at *8 (N.D. Tex. June 3, 2015). Thus, the Protective Order is not nearly as narrow as the Reorganized Debtors assert.

In reality, it seems likely that the Reorganized Debtors cut off the meet-and-confer process because none of the information in the Complaint is properly designated Advisors'-Eyes Only. The Protective Order defined the universe of information properly designated "Advisors'-Eyes Only Material." The Protective Order specifically allows a Producing Party may designate Discovery Material as "Advisors'-Eyes Only" if:

> such Producing Party believes in good faith (or with respect to documents received from another person, has been reasonably advised by such other person) that such Discovery Material is of such a nature that a risk of competitive injury would be created if such Discovery Material were disclosed to persons other than those identified in Paragraph 12 of this Order, which may include certain trade secrets, sensitive financial or business information, or material prepared by its industry professionals, advisors, financial advisors, accounting advisors, experts and consultants (and their respective staff) that are retained by the signatories to this Order in connection with the Cases, and only to the extent that the Producing Party believes in good faith that such material is of such a nature that "Advisors'-Eyes Only" treatment is warranted.

Protective Order at 4, ¶6.

Indeed, as the Fifth Circuit has made clear:

> True, even under the stricter balancing standard, litigants sometimes have good reasons to file documents (or portions of them) under seal, such as protecting trade secrets or the identities of confidential informants. But [m]ost litigants have no incentive to protect the public's right of access. That's why judges, not litigants must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure. Sealings must be explained at a level of detail that will allow for this Court's review. And a court abuses its discretion if it ma[kes] no mention of the presumption in favor of the public's access to judicial records and fails to articulate any reasons that would support sealing.

*Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 (5th Cir. 2021).

Additionally, the Protective Order also contemplates that the term "Disputes" may be broader than the term "Cases":

> WHEREAS, the Parties anticipate that there are certain persons or entities other than the Parties hereto that may also propound or be served with Discovery Requests in connection with one or more Disputes during the course of the Cases is of such a nature that a risk of competitive injury would be created if such Discovery Material were disclosed to persons other than those identified in Paragraph 12 of this Order, which may include certain trade secrets, sensitive financial or business information, or material prepared by its industry professionals, advisors, financial advisors, accounting advisors, experts and consultants (and their respective staff) that are retained by the signatories to this Order in connection with the Cases, and only to the extent that the Producing Party believes in good faith that such material is of such a nature that "Advisors'-Eyes Only" treatment is warranted.

Protective Order at 2.

Pursuant to Paragraphs 24-25 of the Protective Order, the Securities Plaintiffs objected – and continue to object – to the designation of the portions cited in the Complaint as Advisors'-Eyes Only or Confidential. *Binh Hoa Le*, 990 F.3d at 416-21. None of the materials quoted in the Complaint would cause the Reorganized Debtors any competitive injury, as the Complaint amplifies on capital structure issues that were publicly disclosed, albeit materially falsely so.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny in its entirety the Reorganized Debtors' Emergency Motion.

Dated: November 14, 2021

Respectfully submitted,

POLSINELLI PC

By: */s/ Liz Boydston*
Liz Boydston (SBN 24053684)
1000 Louisiana Street, Suite 6400
Houston, Texas 77002
713.374.1667 (telephone)
713.374.1601 (fax)
lboydston@polsinelli.com

10

and

THE WAGNER FIRM
Avi Wagner
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 491-7949
Facsimile: (310) 694-3967
avi@thewagnerfirm.com

and

GLANCY PRONGAY & MURRAY LLP
Robert Prongay
Ex Kano S. Sams II
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
RProngay@glancylaw.com
esams@glancylaw.com

**COUNSEL TO THE SECURITIES
PLAINTIFFS**

11